# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIMSYS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. **2:23-1630** |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| KAREN COHN, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

Plaintiff, Rimsys, Inc. ("Rimsys"), by its undersigned counsel, brings this Verified Complaint against Defendant Karen Cohn ("Cohn"), stating as follows:

## INTRODUCTION

Pittsburgh-based Rimsys was founded in 2017. At great expense, Rimsys has researched and developed the first of its kind regulatory information management ("RIM") software platform that enables medical device companies to organize, manage, and monitor all facets of their regulatory compliance obligations across the globe. Customers using Rimsys' cloud-based RIM platform can store product information, manage registrations and certificates, prepare and transmit regulatory submissions, and keep up to date on regulatory changes and developments in the many different markets they serve. Rimsys' RIM proprietary platform is highly valuable to its customers because it helps them streamline regulatory processes, strengthen compliance, and get new products to market more quickly. Rimsys' RIM platform remains one of the few of its kind for medical devices.

Cohn became employed by Rimsys as a regulatory affairs specialist on March 28, 2022. Prior to her employment with Rimsys, Cohn had never worked for a software company servicing a regulated industry. In her regulatory affairs specialist role, Cohn had access to some of

Rimsys' most valuable and highly confidential information and trade secrets.  Specifically, Cohn was responsible for interfacing with Rimsys' customers, gathering information regarding their practices and preferences, and working with her co-workers to develop Rimsys' plan to implement those customer practices and preferences into the RIM platform.  She had regular and unrestricted access to internal, pre-release versions of the RIM platform, which included numerous features that were designed, developed, and implemented in response to specific preferences voiced by existing customers.  Cohn also garnered extensive technical knowledge as to how customer preferences and changes to meet new regulatory requirements were ultimately translated into the Rimsys software's functionality.

In light of her access to this highly confidential information and trade secrets, Rimsys asked Cohn to sign an employment agreement at the commencement of her employment.  The employment agreement obligated Cohn to protect Rimsys' confidential information and trade secrets and restricted her from holding a similar position with a competitor for a period of twelve months after her employment with Rimsys.  At the end of her employment, the agreement required Cohn to return certain of Rimsys' confidential information and trade secrets in her possession and inform Rimsys of her subsequent employment during the restricted period.

Cohn resigned from her employment on July 21, 2023.  Immediately after resigning, Cohn went to work for Veeva Systems, Inc. ("Veeva"), a direct competitor of Rimsys.  Cohn is currently serving as Veeva's Director, Regulatory Strategy, MedTech, a significant promotion from her role with Rimsys.  Cohn failed to disclose this employment to Rimsys, in breach of her employment agreement.  Instead, she merely stated that she was accepting a new role for significantly more money.  In addition to learning of her prohibited employment, Rimsys recently discovered that during the course of her employment, including shortly before her

resignation, Cohn stole Rimsys' confidential information and trade secrets when she emailed them from her work email to her personal email account. Cohn failed to inform Rimsys of her theft and failed to return this information to Rimsys despite its request that she do so. This conduct also constitutes a breach of her employment agreement.

Cohn's value to Rimsys' competitors stems directly from her knowledge of Rimsys' confidential information and trade secrets. Consequently, Cohn's employment with Veeva will inevitably result in the disclosure of Rimsys' confidential information and trade secrets, as well as the improper conversion of its customers. These were the exact harms that Cohn's restrictive covenant was intended to prevent. Accordingly, this Court should enforce Cohn's restrictive covenant and prohibit her from working for Veeva, or any similar position for another competitor, for a twelve-month period, and compel her to return any confidential information and/or trade secrets that she stole from Rimsys before leaving the company.

## PARTIES

1.      Plaintiff Rimsys is a Delaware corporation with its principal place of business at 100 South Commons, Suite 102, Pittsburgh, Pennsylvania, 15212.

2.      Upon information and belief, Cohn is an adult individual who resides at 709 Filbert Street, Pittsburgh, Pennsylvania, 15232.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this civil action under 28 U.S.C. § 1331 because the case arises, in part, under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

4.      This Court has supplemental jurisdiction over the state law claims in this action under 28 U.S.C. § 1367 because such claims are so closely related to the Defend Trade Secrets Act claim that they are part of the same case and controversy.

5.     Cohn signed an employment agreement with Rimsys at the outset of her employment (the "Agreement").   A true and correct copy of the Agreement is attached at **Exhibit A.**   The Agreement provides that any dispute under its terms "shall be brought exclusively in the United States District Court for the Western District of Pennsylvania, or the Court of Common Pleas of Allegheny County, Pennsylvania."  *See* Ex. A at p. 6.

6.     Cohn also irrevocably consented and submitted "to the personal jurisdiction of the specific forums, and venue therein."  *See* Ex. A at p. 6.

7.     In addition, this Court has personal jurisdiction over Cohn because she has the required minimum contacts with this forum to establish personal jurisdiction.  Cohn (a) executed the Agreement with Rimsys, in which she agreed that the Agreement "shall be construed and governed in accordance with the laws of the Commonwealth of Pennsylvania…."  (Ex. A at p. 6); (b) reported to Rimsys' Pennsylvania headquarters; and (c) was paid out of Rimsys' Pennsylvania headquarters.

## FACTS

### I.     Rimsys' Market, Products, and Customers.

8.     Rimsys is a software company that provides digital (cloud-based) products for medical device manufacturers in the medical technology ("medtech") space.

9.     Rimsys' RIM platform was developed beginning in 2017 and brought to market in 2019.

10.     Rimsys operates a cloud-based platform that allows medtech companies to digitize all aspects of their regulatory affairs into a centralized system.

11.     Rimsys' customers use the RIM platform to define and track the processes and tasks, referred to as "workflows," needed to bring to market, sell medical devices throughout the

world, and maintain products compliance globally.  This includes the workflows needed to accomplish the preparation and transmission of regulatory medical device, submissions, compilation and maintenance of technical files for devices, monitoring and management of device registrations and certificates, tracking of device commercialization, and the management of unique device identification and labeling across the globe, standards management, essential principles management, and post-market surveillance management, among others.  Rimsys' customers also use the RIM platform to store information related to their medical devices and to keep up to date on global regulatory changes and developments.

12.    Rimsys' customers require this type of solution to manage the often hundreds of thousands of medical devices that they market and commercially distribute in many countries and markets around the world.

13.    Historically, these types of holistic systems were developed for and adopted by the pharmaceutical industry.

14.    Rimsys' platform, however, is the first cloud-based solution of its kind specifically marketed and sold to the medtech industry, which involves the sale of medical devices rather than medications, which is fundamentally different.

15.    The Rimsys RIM platform is only available to customers who execute agreements containing confidentiality clauses.

**II.    Rimsys' Competition in the RIM Software Space.**

16.    Veeva is Rimsys' primary competitor in the enterprise-level medtech market.

17.    Upon information and belief, Veeva was founded in 2007.  It currently has over 6,500 employees, annual revenue of over $2,000,000,000, and trades on the New York Stock Exchange.

18.     Historically, Veeva offered RIM solutions for the pharmaceutical industry. However, in the last few years, Veeva has also introduced a RIM product for the medtech industry, which is intended to function much like Rimsys' software and serve similar customers.

19.     Over the last twelve to twenty-four months, as part of its competitive strategy, Veeva has tried to solicit at least two other Rimsys employees, in addition to Cohn.

20.     Veeva is uniquely aware of, and closely tracks, Rimsys' market position and product advancements.

21.     As a publicly traded company with vast resources, Veeva has made enormous investments into its RIM platform and has specifically targeted Rimsys as its primary competitor in the medtech industry.

22.     Upon information and belief, given Rimsys' success in the medtech RIM platform market and the confidential nature of the Rimsys RIM platform, Veeva is attempting to poach Rimsys' employees to obtain confidential information from them in order to compete.

**III.    Rimsys' Confidential Information and Protectable Trade Secrets.**

23.     Rimsys' regulatory specialists, such as Cohn, are privy to its most important, highly confidential, and proprietary business strategies and plans.

24.     This confidential information includes, but is not limited to, customer lists, customer practices and preferences, training materials, market research, competitive strategies, contract terms, design strategies, and business development and marketing initiatives (the "Confidential Information").

25.     Rimsys has also invested a substantial amount of time and money into developing a robust portfolio of trade secrets that gives it a material advantage over its competitors.

26.     Relevant here are trade secrets that include, but are not limited to (the "Trade Secrets"):

      a.     Customer-specific practices and preferences regarding functionality and features in connection with RIM systems;

      b.     Specialized, technical knowledge and know-how regarding Rimsys' past and future implementation of those customer preferences into its proprietary RIM platform;

      c.     Rimsys' plan to implement customer feedback, practices, and preferences into the RIM platform; and

      d.     Strategies and plans to update the RIM platform to meet new regulatory requirements.

27.     Since 2017, Rimsys has poured more than $15,000,000 into developing its Confidential Information and Trade Secrets.

28.     Given this substantial investment of time and money, Rimsys has also gone to great lengths to protect its Confidential Information and Trade Secrets from disclosure.  Those efforts include:

      a.     The use of, among other things, firewalls, password protection, encryption to prevent unauthorized access to its servers;

      b.     Limiting employees' access to information that is necessary to complete their jobs;

      c.     Controlling physical access to its offices;

      d.     Requiring employees and customers with access to certain confidential information to sign agreements containing confidentiality provisions;

   e.  Implementing standard office policies and procedures and outlining the repercussions of violating same;

   f.  Enforcing confidentiality policies identified in its employee handbook; and

   g.  Requiring members of a "client advisory board" to keep information shared confidential.

29. Rimsys' Confidential Information and Trade Secrets could be easily exploited by a competitor if the competitor were permitted to gain access to such information.

**IV. Cohn Accepts Employment with Rimsys.**

30. Rimsys hired Cohn as a Regulatory Affairs Specialist on March 28, 2022.

31. Upon information and belief, Cohn's employment with Rimsys was her first experience working for a software company servicing the medical device industry.

32. Upon information and belief, prior to working for Rimsys, Cohn's only medtech experience was working in regulatory compliance for a company that developed and sold medical devices for approximately two and half years.

33. Upon information and belief, for the nearly three and a half years beforehand, Cohn worked in regulatory compliance for chemical manufacturers.

34. At the outset of her employment, Cohn signed the Agreement.

35. In her role, Cohn was responsible for, among other things, collaborating with both co-workers and customers to define, clarify, and implement regulatory requirements and workflows into the design of the Rimsys RIM platform.

36. Cohn had direct contact with Rimsys' customers. She provided customers with information concerning the relevant regulatory requirements, workflows, and deliverables. She

also taught customers how to map those workflows and deliverables to the Rimsys RIM platform.

37.    In addition, as a Regulatory Affairs Specialist, Cohn was tasked with gathering information from Rimsys' customers regarding their practices and preferences.  She also regularly solicited customer feedback to ensure that Rimsys' software met customer preferences. She would then collaborate with her co-workers to develop Rimsys' plan to implement customer feedback, practices, and preferences into the RIM platform.

38.    Cohn was also involved in strategizing and planning to update the RIM platform to meet new regulatory requirements.

39.    During her employment with Rimsys, Cohn had regular and unrestricted access to internal, pre-release versions of the RIM platform.  Those alpha and beta versions included numerous features that were designed, developed, and implemented in response to specific preferences voiced by existing customers.

40.    Through her employment with Rimsys, Cohn garnered extensive technical knowledge as to how customer preferences and changes to meet new regulatory requirements were ultimately translated into the Rimsys software's functionality.

41.    As such, Cohn had direct access to Rimsys' Confidential Information and Trade Secrets.

42.    The Agreement, as well as Rimsys' employee policies, dictated how Cohn was permitted to handle this information both during her employment and afterwards.  *See* Ex. A at pp. 2-3.

43.     To protect Rimsys' Confidential Information, Trade Secrets, and customer relationships, the Agreement restricts Cohn's ability to work for its competitors for a period of twelve months following her employment with Rimsys:

Non-Compete Covenant

Due to the nature of the Company's business operations, in the performance of your duties for the Companies you may have access to Confidential Information, including, but not limited to, technical proprietary information, customer information, sales and pricing information, product development strategies, and marketing strategies.  The availability of this information in the course of the performance of your duties will give you a unique value to us because of the direct contact you may have with our products and/or customers.  It is thus necessary that we ask you to limit, both during and after your employment with us, certain activities that you might otherwise consider undertaking.

In order to protect the Company's Confidential Information and good will, during your employment and for a period of twelve (12) months following the conclusion of your employment for any reason (the "Restricted Period"), you agree that you will not (directly or through the control of others):

a)   provide services for the benefit of any person or entity that is competitive with the business of the Company within the United States, North America, or Europe, that are the same or similar in function or purpose to those you provided to the Company during the last two years of your employment (or such shorter period of time as you are employed); or

b)   take on any other responsibilities for any person or entity that is competitive with the business of the Company that would involve the probable use or disclosure of Confidential Information or the conversion of customers to the benefit of a competing person or entity to detriment of the Company.

*See* Ex. A at p. 4.

**V.      Cohn Resigns from Rimsys and Breaches Her Restrictive Covenant and Other Obligations.**

44.     Cohn resigned from Rimsys on July 21, 2023.

45.     At the time, she refused to tell Rimsys where she was going or the type of role that she would be performing.  She only divulged that she would be receiving a promotion and increased compensation.

46.     Shortly thereafter, and despite being subject to a noncompete restriction and obligations with respect to Rimsys' Confidential Information and Trade Secrets, she, upon information and belief, began working for Veeva as its Director, Regulatory Strategy, MedTech.

47.     Given her limited experience in the medtech industry and even more limited experience with medtech software, her employment with Veeva in such a role is a significant promotion from her prior role with Rimsys.

48.     However, her new role is certainly similar in function and purpose to the role she held with Rimsys less than twelve months ago, in violation of the Agreement. *See* Ex. A at p. 4.

49.     Contrary to the requirements of the Agreement, Cohn failed to disclose to Rimsys her employment with Veeva within ten days after accepting Veeva's offer. *See* Ex. A at p .5.

## VI.     Cohn Misappropriates Rimsys' Confidential Information and Trade Secrets.

50.     Cohn's employment with Veeva involves the probable use or disclosure of Confidential Information and Trade Secrets, and the potential conversion of Rimsys' customers, less than twelve months after leaving Rimsys' employ, also in violation of the Agreement. *See* Ex A at p. 4.

51.     Given Cohn's role as a regulatory affairs specialist, the highly sensitive information that she had access to, and the valuable customer relationships that Rimsys paid her to develop, she cannot perform her competing role as Director, Regulatory Strategy, MedTech with Veeva without inevitably calling upon Rimsys' Confidential Information and Trade Secrets.

52.     In fact, Cohn violated Rimsys' procedure for handling Confidential Information and Trade Secrets even prior to her resignation from employment with Rimsys.

53.     More specifically, Cohn compiled and emailed Rimsys' Confidential Information and Trade Secret from her work email account to her personal email account in the months prior to her resignation.

54.     Cohn failed to notify Rimsys that she had transmitted this Confidential Information and Trade Secrets to a personal device.  Instead, Rimsys only discovered the transmission after reviewing her work email account following her resignation from employment.

**VII.   Cohn Fails to Respond and Veeva Rebuffs Pre-Suit Notice.**

55.     By letter dated August 31, 2023, Rimsys advised Cohn that she was in breach of the Agreement through, *inter alia*, her employment with Veeva and improper transmittal of Confidential Information and Trade Secrets to her personal email account.

56.     The letter requested that Cohn return any paper documents containing Rimsys' Confidential Information and Trade Secrets by September 1, 2023.

57.     Cohn never responded to the August 31, 2023, letter.

58.     Rimsys also sent a letter to Veeva on August 31, 2023, advising the company that Cohn was in violation of the Agreement and asking for confirmation that it would prohibit Cohn from utilizing any of Rimsys' Confidential Information or Trade Secrets in her new employment.

59.     Veeva finally responded on September 2, 2023, representing that Cohn had stated she was not in possession of any Confidential Information or Trade Secrets.

60.     Veeva, however, refused to acknowledge the validity of the Agreement's restrictive covenants.

## VIII.   Veeva's Public Resistance to Restrictive Covenants.

61.   Veeva's public position on the legitimacy and enforceability of restrictive covenants is made clear in its marketing materials.

62.   On its website, Veeva devotes an entire page to criticizing non-compete agreements and its efforts to outlaw those covenants:



Products   Services   Customers   Resources   Events   About Veeva   🔍 Search

 Our Position on Non-Compete Agreements

*"We believe in our people and want them to be successful here at Veeva or wherever their careers take them."* – Peter Gassner, founder and CEO

Employee success is one of our four core values. We believe in our people and do what we can to make sure they learn, work with a great team, and build successful careers at Veeva or wherever they go.

The widespread misuse of non-compete agreements conflicts with our value of employee success. They restrict employees' ability to pursue new opportunities and advance their careers.

About 30 million U.S. workers are impacted by non-competes. Many companies include these clauses in their standard terms of employment, realizing that most employees won't read or understand the fine print. Employees often unknowingly sign contracts that could eventually be used against them as they pursue new job opportunities.

Employees should have the right to move freely between jobs, advance their careers, and improve their lives without fear of being sued by their former employers. We have taken legal action to fight these unfair practices that limit employees' basic rights to work where they choose, and the California Court of Appeals has [illegible] to seek relief against non-California companies that we believe have misused non-compete agreements.

*See* Veeva, "Our Position on Non-Compete Agreements," https://www.veeva.com/noncompetes/, last accessed Sept. 11, 2023.

63.   As a matter of company policy, Veeva invites its candidates to "break the cycle" and "join a progressive company that does not require you to sign a non-compete agreement and that will defend you against attempts to enforce your existing non-compete." *Id.*

64.     Notably, Veeva still cautions its new employees of their responsibility to "return all data to your former employer and never share confidential information." *Id.*

65.     Veeva goes on to promise its candidates that, "in the event your former employer pursues a claim, Veeva will provide for your full legal representation and help make the process as easy as possible." *Id.*

66.     Further, Veeva's website promises employees like Cohn that, even if she is prohibited from working due to a restrictive covenant, it will continue to retain and pay her during the time that she is enjoined from working in her new position. *Id.*

## IX.   Rimsys is Entitled to a Temporary Restraining Order and/or Injunctive Relief Against Cohn.

67.     Rimsys seeks immediate relief in the form of a temporary restraining order and/or preliminary injunction against Cohn and ask this Court to (a) require the return of Rimsys' Confidential Information and Trade Secrets; (b) enjoin Cohn from misusing, misappropriating, or otherwise disclosing Rimsys' Confidential Information and Trade Secrets; and (c) enjoin Cohn from working for a competitor, in the same or similar role as she held with Rimsys, for twelve months, as prohibited by the Agreement.

68.     Rimsys is likely to succeed on the merits of its case because it has a valid and enforceable Agreement with Cohn, legitimate business interests to protect, and Cohn's breaches of the Agreement and other obligations to Rimsys are open, blatant, and obvious.

69.     Rimsys' customer relationships, good will, market position, business opportunities, competitive advantage, Confidential Information and Trade Secrets, and relationships with its remaining employees will be irreparably harmed unless a temporary restraining order and/or preliminary injunction is granted.

70.     Rimsys will suffer far greater harm if a temporary restraining order and/or preliminary injunction is not granted than Cohn will suffer if one is granted.

71.     For her part, Cohn will suffer no harm because she will simply be ordered to honor the promises that she already made.

72.     Further, Veeva has promised that it will continue to retain and pay her during the time that she is enjoined from working in her new position.

73.     Granting a temporary restraining order and/or preliminary injunction would serve the public interest.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE DEFEND TRADE SECRETS ACT**</u>

74.     The preceding paragraphs of the Verified Complaint are hereby incorporated by reference as though the same were fully set forth herein.

75.     Rimsys' Trade Secrets are essential to its business and market position, all of which Cohn had access to and knowledge of by virtue of her employment relationship with Rimsys.

76.     Rimsys' Trade Secrets constitute trade secrets under the Defend Trade Secrets Act ("DTSA").

77.     Disclosure and unauthorized use of this type of information undermines Rimsys' competitive position in the marketplace.

78.     Rimsys has taken various steps to protect its trade secrets, including: (a) using network firewalls, password protection, and security credentials to prevent unauthorized access to its servers; (b) limiting its employees' access to information to that which is necessary to fulfill their job functions; (c) controlling physical access to its offices, facilities, and information; (d) requiring employees with access to its Trade Secrets to sign restrictive covenants, including

nondisclosure, non-solicitation, and/or non-competition agreements; (e) implementing and enforcing policies and procedures to protect its Confidential Information and Trade Secrets, such as its employee handbook, and (f) enforcing its employees' obligations with respect to its Confidential Information and Trade Secrets.

79.     Cohn has improperly and without authorization misappropriated, retained, used, disclosed, and/or exploited Rimsys' Trade Secrets.   This conduct constitutes an actual misappropriation and misuse of Rimsys' trade secret information in violation of the DTSA.

80.     In addition, given the Trade Secrets to which Cohn was privy in her employment with Rimsys, Cohn cannot work for a competitor of Rimsys, in the same or similar position, without inevitably calling upon or using Rimsys' Trade Secrets.

81.     If left unaddressed, Cohn will continue to improperly and without authorization misappropriate, retain, use, disclose, and/or exploit Rimsys' Trade Secrets on behalf of the competitor for whom she works.

82.     Rimsys did not expressly or impliedly consent to Cohn's acquisition or use of its Trade Secrets.

83.     Upon information and belief, Cohn's misappropriation is willful and malicious.

84.     Upon information and belief, Cohn's misappropriation of Rimsys' Trade Secrets is causing and will continue to cause Rimsys to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged Rimsys in an amount to be determined at trial.

85.     The threatened and actual injuries that Rimsys has suffered and will suffer are immediate and irreparable.   Because of the difficulty in quantifying the injury and harm to Rimsys' ability to compete, acquire, and maintain a competitive advantage through its Trade Secrets, monetary damages alone will not adequately compensate Rimsys for Cohn's wrongful

use of such information and breach of her duties to Rimsys.   Rimsys, therefore, lacks an adequate and complete remedy at law and an equitable remedy is appropriate in addition to monetary damages.

86.     Under Section 1836 of the DTSA, Rimsys is entitled to a temporary restraining order, injunctive relief, compensatory damages, exemplary damages, an award of reasonable attorneys' fees, and/or other appropriate relief.

## COUNT II
## VIOLATION OF THE PENNSYLVANIA
## UNIFORM TRADE SECRETS ACT

87.     The preceding paragraphs of the Verified Complaint are hereby incorporated by reference as though the same were fully set forth herein.

88.     Cohn is a "person" as defined by the Pennsylvania Uniform Trade Secrets Act ("PUTSA").

89.     In the course of her employment, Rimsys afforded Cohn access to and use of its Trade Secrets, as defined above.

90.     Rimsys has spent significant time and money developing its Trade Secrets.

91.     Rimsys' Trade Secrets are protected, kept confidential, and are not publicly disclosed.

92.     Cohn has improperly and without authorization misappropriated, retained, used, disclosed, and/or exploited Rimsys' Trade Secrets.   This conduct constitutes an actual misappropriation and misuse of Rimsys' trade secret information in violation of PUTSA.

93.     Rimsys' Trade Secrets are valuable and would be harmful to Rimsys in the hands of its competitors.

94.     By virtue of her employment with Rimsys, Cohn was obligated to maintain the confidentiality of Rimsys' Trade Secrets, as well as not to use them for her personal benefit or the benefit of a competitor.

95.     In addition, given the Trade Secrets to which Cohn was privy in her employment with Rimsys, Cohn cannot work for a competitor of Rimsys without inevitably calling upon or using Rimsys' Trade Secrets.

96.     As a direct and proximate result of the actual and/or threatened misappropriation of Rimsys' Trade Secrets, Rimsys has suffered and will continue to suffer substantial damages, including but not limited to the loss of good will, revenues, profits, the value of its investment, and its competitive advantage in the marketplace.

97.     Cohn's conduct is knowing, willful, intentional, malicious, unprivileged, and in bad faith, has caused, and will continue to cause, immediate and irreparable harm to Rimsys, as well as causing it to suffer compensatory damages.

98.     Rimsys is entitled to a temporary restraining order, injunctive relief, double damages, and affirmative relief to ensure protection of its Trade Secrets, as well as an award of reasonable attorneys' fees, exemplary damages, and/or other appropriate relief under Sections 5303-5305 of the PUTSA.

<u>**COUNT III**</u>
<u>**BREACH OF CONTRACT**</u>

99.     The Agreement is a valid and enforceable contract that is incidental to the employment relationship between Cohn and Rimsys and is supported by adequate consideration.

100.     Moreover, the restrictive covenants therein are reasonably necessary to protect Rimsys' legitimate interests and are reasonably limited in duration and geographic scope.

101.    Under the Agreement, Cohn agreed that she would not compete with Rimsys in the same or similar position for a period of twelve months following her employment with Rimsys.

102.    More specifically, Cohn agreed as follows:

> In order to protect the Company's Confidential Information and good will, during your employment and for a period of twelve (12) months following the conclusion of your employment for any reason (the "Restricted Period"), you agree that you will not (directly or through the control of others):
>
> > a) provide services for the benefit of any person or entity that is competitive with the business of the Company within the United States, North America, or Europe, that are the same or similar in function or purpose to those you provided to the Company during the last two years of your employment (or such shorter period of time as you are employed);
> >
> > b) take on any other responsibilities for any person or entity that is competitive with the business of the Company that would involve the probable use or disclosure of Confidential Information or the conversion of customers to the benefit of a competing person or entity to detriment [sic] of the Company.

*See* Ex. A at p. 3.

103.    In the Agreement, Cohn agreed that "during and after" her employment, all Confidential Information would be "solely [Rimsys'] property."  *See* Ex. A at p. 4.

104.    Cohn further agreed that "during and after" her employment, she would "not remove Confidential Information from [Rimsys'] premises without prior written authorization from the Founder and President, will keep Confidential Information confidential, and will not disclose or convey it to anyone outside of [Rimsys] or use it in any way except in the performance of [her] duties and for the benefit of [Rimsys]."  *See* Ex. A at p. 4.

105.    Cohn also agreed that "upon the cessation of" her employment with Rimsys, she would "immediately return all [Rimsys] property, including, without limitation, computers, data

storage devices, ... and all Confidential Information and not retain originals or copies of these items and data in any forms." *See* Ex. A at p. 4.

106.    Cohn acknowledged and agreed that she had "access to Confidential Information, including, but not limited to, technical proprietary information, customer information, sales and pricing information, product development strategies, and marketing strategies" by virtue of her employment with Rimsys. *See* Ex. A at p. 4.

107.    Cohn also acknowledged and agreed that the "availability of this information" through her employment with Rimsys would provide a "unique value" because of the "direct contact" she would have with Rimsys' "products and/or customers." *See* Ex. A at p. 4.

108.    Cohn agreed that, in the event Rimsys filed suit to enforce its rights under the Agreement and obtained "any relief whatsoever," she would "pay [Rimsys'] reasonable attorneys' fees and costs incurred in connection therewith." *See* Ex. A at p. 6.

109.    As set forth herein, upon information and belief, Cohn violated her obligations under Agreement by (a) stealing and retaining Rimsys' Confidential Information; (b) disclosing Rimsys' Confidential Information and Trade Secrets to her new employer and/or using Rimsys' Confidential Information and Trade Secrets on behalf of her new employer; (c) accepting employment with and working for a competitor in the same or similar position, thereby actively and directly competing with Rimsys; and (d) failing to return Rimsys' property, including without limitation Rimsys' Confidential Information.

110.    As a proximate result of Cohn's actions, Rimsys has suffered and will continue to suffer harm which cannot be adequately compensated by monetary damages alone.

111.    With full knowledge of her post-employment obligations to Rimsys, Cohn is in breach of the Agreement.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

112.    The preceding paragraphs of the Verified Complaint are hereby incorporated by reference as though the same were fully set forth herein.

113.    An employee has a fiduciary duty of loyalty to provide services to her employer in accordance with the terms and conditions of that engagement.

114.    Further, an employee has a duty to act with the utmost good faith in the furtherance and advancement of the interests of her employer.

115.    Included within an employee's duty of loyalty is a duty not to act and not to agree to act during the period of her employment for any persons whose interests conflict with her employer's interests in the matters in which the employee is employed.

116.    Cohn owed a duty of loyalty to Rimsys based on her employment and under the Agreement.

117.    As stated in detail above, Cohn breached the duty of loyalty owed to Rimsys when, prior to her resignation and while still being paid by Rimsys, Cohn transmitted Confidential Information and Trade Secrets to her personal email account so that she could use it on behalf of herself and a new employer.

## COUNT V
## UNFAIR COMPETITION

118.    The preceding paragraphs of the Verified Complaint are hereby incorporated by reference as though the same were fully set forth herein.

119.    Cohn, by engaging in the conduct described above, has engaged in unfair competition with Rimsys.

120.    Cohn's conduct has caused and will continue to cause damage to Rimsys' business relationships and other valuable business interests.

121.    Cohn's conduct has been and continues to be willful, intentional, and unprivileged and has caused and will continue to cause Rimsys to suffer immediate, irreparable harm, as well as other compensatory damages.

122.    Cohn's conduct, as described above, is contrary to honest industrial and commercial practices.

### **PRAYER FOR RELIEF**

WHEREFORE, Rimsys respectfully prays the Court:

a.    For a judgment in its favor and against Cohn on all claims herein;

b.    For an award of damages in an amount to be determined by the trier of fact, together with pre- and post-judgment interest thereon at the maximum legal rate;

c.    For injunctive relief in the form of an order:

- Requiring Cohn to deliver to a mutually agreeable third-party forensic vendor all devices and systems that she has used since March 9, 2022, and any additional device or system that was used to disseminate or access Rimsys' information or on which Rimsys' information was found, to ensure that any and all Confidential Information and Trade Secrets are retrieved and permanently removed, and to pay for the services of such vendor;

- Requiring Cohn to immediately return and deliver to Rimsys all Rimsys documents, data, or property;

- Prohibiting Cohn from (i) misappropriating, using, or disclosing to any person or entity Rimsys' Confidential Information and Trade Secrets and (ii) possessing any originals, copies or summaries of Rimsys' Confidential Information and Trade Secrets in any form, electronic or otherwise;

- Prohibiting Cohn from working for a competitor in the same or a similar position for a period of twelve months and requiring Cohn to abide by the terms of the Agreement, as tolled for the period of non-compliance;

- Requiring Cohn to provide quarterly affidavits for a period of one year verifying that she has complied with her obligations to Rimsys under the Order; and

- For additional equitable relief in the form of an order disgorging Cohn of any and all profits, compensation, or other amounts or benefits realized directly or indirectly as a result of or in connection with any breach of the Agreement.

d.      For an award of its reasonable costs, expenses, and legal fees incurred in this action as provided in the Defend Trade Secrets Act and/or Pennsylvania Uniform Trade Secrets Act and/or the Agreement;

e.      For an award of actual and exemplary damages;

f.      That the costs of this action be taxed to Cohn;

g.      For a trial by jury on all issues so triable; and

h.      For such other and further relief as the Court may deem just and proper.


Date:  September 11, 2023                    Respectfully submitted,

                                             MEYER, UNKOVIC & SCOTT LLP


                                   By:   _/s/Antoinette C. Oliver_____
                                         Antoinette C. Oliver
                                         Pa. I.D. No. 206148
                                         Email:  aco@muslaw.com
                                         Justin D. Beck, Esquire
                                         Pa. I.D. No. 324787
                                         Email:  jdb@muslaw.com

                                         535 Smithfield Street, Suite 1300
                                         Pittsburgh, PA 15222
                                         Phone – 412 456 2800
                                         Fax – 412 446 2864

                                         *ATTORNEYS FOR PLAINTIFF*
                                         *RIMSYS, INC.*

**V E R I F I C A T I O N**

I, James Gianoutsos, CEO of Rimsys, Inc., state that I have read the foregoing Verified

Complaint and verify that I am authorized to make this Verification on behalf of Rimsys, Inc.,

and that the averments made are true and correct of my knowledge, except as to those things

stated upon information and belief, and as to those I believe to be true.  This statement is made

subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Date: _2023 - SEPT - 11_

James Gianoutsos