March 9, 2022

Karen Knutson

Dear Karen,

This letter is intended to inform you of certain policies concerning your obligations to any previous employers and to ask you to tell us about them. We also want to inform you of some of the conditions of your employment, including the safeguarding of confidential information, the ownership of any inventions or innovations you may make, and your continuing obligations to Rimsys, Inc. (referred to in this letter as the "Company") should you leave our employ.

You are asked to confirm the obligations set forth in this letter and to agree to be bound by them, in consideration of our offer to you of employment with the Company.

These obligations will become effective after you have been offered, and accepted, a position of employment with the Company.

Your Preexisting Obligations and Affiliations

We will not ask you to do anything inconsistent with any prior commitments or agreements you have made to preserve the confidentiality of trade secrets and other proprietary information belonging to a previous employer, to the assignment of inventions and/or to limit your continued employment in a particular field, or to do anything that is inconsistent with prior affiliations you may have had. We also ask that you agree not to use or disclose to the Company I any trade secrets, confidential, and/or proprietary information relating to your previous employer(s) that you may be required to keep confidential.

However, we do need to know of the existence of any such commitments, agreements or affiliations. We may need to review them to determine if we can offer you the employment we wish and, in some instances, may find that we cannot employ you until we have done so. Accordingly, please describe briefly any such commitments, agreements, and affiliations where noted below and, if possible, provide a copy of any written version of them to the Founder and President of the Company.

1) I do not possess any information that is or could be confidential with respect to third parties, have not been and am not subject to any restrictions concerning the disclosure of confidential information or its use in my employment, and any information that I will or may use in my employment with the Company was obtained by lawful means and I properly possess it.

True
(TRUE) (FALSE)

If answer is "FALSE", specify on separate sheet.

2) I have signed an agreement with a previous employer, or am otherwise obligated, relating to:

No         Inventions
(YES) (NO)

_N o_ _____ Confidential Information
(YES) (NO)

_N o_ _____ Limitation on Employment
(YES) (NO)

If any answer is "YES", specify on separate sheet.

3) I am not and have not been a promoter, greater than five percent shareholder, director, employee or officer of, or consultant to, a business similar to the business of the Company (defined below) .

_True_
(TRUE) (FALSE)

If answer is "FALSE", specify on separate sheet.

By signing this letter, you agree that you will not enter into any such agreement, commitment or affiliation during your employment with us unless you obtain the prior written approval of the Founder and President of the Company.

Confidentiality

We expect that much of your work will involve exposure to confidential information, some of which includes unpatented trade secrets. We want you to understand fully at the outset how important it is to the continued success of the Company's business that there be no unauthorized disclosure of the Company's trade secrets or other confidential and/or proprietary information, and that this security must be maintained both during, and after, your employment. All of the Company's employees have a common interest and responsibility in seeing that no one employee accidentally or intentionally siphons off, discloses or distributes any part of this pool of information to anyone outside of the Company.

The information that we regard as confidential ("Confidential Information") includes all information, individually or collectively, that you learn or originate during your employment with the Company or any of its subsidiaries or affiliates, whether tangible or intangible, concerning our affairs, both business and technical, which is not publicly available (as a whole) and which has not been approved by us for unrestricted release to persons outside the Company. It includes information and data developed by employees and may include information developed by you or your fellow employees or received by us from persons outside the Company. It may also relate to past, present or future, and may concern by way of example and not limitation: business plans, strategies, and analyses; business preferences and historical transaction data regarding the Company's existing and prospective customers; forecasts and analyses; internal business methods and systems, know how, and innovations; non-public financial data; marketing plans, research, and analyses;  software design and implementation; unpublished pricing information and variables such as costs, discounting options, and profit margins; records of private dealings with vendors, suppliers, and distributors;  bids; technology; test procedures; private contract provisions; personnel data; business sale and acquisition opportunities identified by the Company and related analysis; records of private dealings with vendors, suppliers, and distributors; and Company trade secrets. It may be oral or contained on paper records, printouts, drawings, film, disks, or computer programs, or any other media regardless of its physical form or characteristics, and

includes all reproduction of the foregoing by whatever process.

You agree that, during and after your employment, Confidential Information is solely the Company's property. You also agree that, during and after your employment, you will not remove Confidential Information from the Company's premises without prior written authorization from the Founder and President, will keep Confidential Information confidential, and will not disclose or convey it to anyone outside of the Company or use it in any way except in the performance of your duties and for the benefit of the Company. Further, you agree that upon the cessation of your employment with the Company for any reason, you will immediately return all Company property, including, without limitation, computers, data storage devices, passwords, ID cards, keys and all Confidential Information and not retain originals or copies of these items and data in any form. Upon request of the Company, you will provide the Company with a sworn written statement confirming your compliance with the foregoing provision.

Nothing in this Agreement prohibits you from reporting an event that you reasonably and in good faith believe is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Labor), requires notice to or approval from the Company before doing so, or prohibits you from cooperating in an investigation conducted by such a government agency. This may include a disclosure of trade secret information provided that it must comply with the restrictions in the Defend Trade Secrets Act of 2016 (DTSA). The DTSA provides that no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document if such filing is under seal so that it is not made public. Also, an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal, and does not disclose the trade secret, except as permitted by court order. To the extent that you are covered by Section 7 of the National Labor Relations Act (NLRA) because you are not in a supervisor or management role, nothing in this Agreement shall be construed to prohibit you from using information you acquire regarding the wages, benefits, or other terms and conditions of employment at the Company for any purpose protected under the NLRA. You understand that under the NLRA, covered employees have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

Inventions: Disclosure and Assignment

You agree to disclose to us any and all inventions, discoveries, improvements, designs, processes, machines, products, business methods or systems, know how, ideas or concepts of commercial value or utility, developments, or innovations, patentable or not, made or conceived by you, alone or jointly with others, during your employment with us and relating to, arising out of, or pertaining to, the Company's business. All such items to be disclosed are called the "Inventions".

You assign to the Company your right, title and interest in and to all Inventions that are made, conceived, or reduced to practice by you, alone or jointly with others, during your employment with the Company (whether during working hours or not) that either (i) relate to the Company's business, or actual or demonstrably anticipated research or development of the Company, or (ii) involve the use or

assistance of any tools, time, material, personnel, information, or facility of the Company, or (iii) result from or relate to any work, services, or duties undertaken by you for the Company. You further agree to execute papers and take other reasonable steps to confirm assignment to us of, your entire right, title and interest in and to any of the Inventions.

You agree that you will not claim rights in, or control over, any Invention as being excluded from this Agreement because it was conceived or created prior to being employed by the Company (a "Prior Work") unless such item is identified on Appendix A and signed by you as of the date of this Agreement. You will not incorporate any such Prior Work into any work or product of the Company without prior written authorization from the Company to do so; and, if such incorporation does occur, you grant the Company and its assigns a nonexclusive, perpetual, irrevocable, fully paid-up, royalty-free, worldwide license to the use and control of any such item that is so incorporated and any derivatives thereof, including all rights to make, use, sell, reproduce, display, modify, or distribute the item and its derivatives.

This Agreement's assignment provisions are limited to only those inventions that can be lawfully assigned by an employee to an employer.

You agree that you will, without further compensation but at no expense to you, do all lawful things as may be required to create, maintain and protect the Company's interest in the Inventions, whether patentable or not. This includes, but is not limited to, maintaining invention records that will be our property and assisting with the preparation of, and executing, documents necessary to fulfill these purposes.

Non-Compete Covenant

Due to the nature of the Company's business operations, in the performance of your duties for the Companies you may have access to Confidential Information, including, but not limited to, technical proprietary information, customer information, sales and pricing information, product development strategies, and marketing strategies. The availability of this information in the course of the performance of your duties will give you a unique value to us because of the direct contact you may have with our products and/or customers. It is thus necessary that we ask you to limit, both during and after your employment with us, certain activities that you might otherwise consider undertaking.

In order to protect the Company's Confidential Information and good will, during your employment and for a period of twelve (12) months following the conclusion of your employment for any reason (the "**Restricted Period**"), you agree that you will not (directly or through the control of others):

 a) provide services for the benefit of any person or entity that is competitive with the business of the Company within the United States, North America, or Europe, that are the same or similar in function or purpose to those you provided to the Company during the last two years of your employment (or such shorter period of time as you are employed); or

 b) take on any other responsibilities for any person or entity that is competitive with the business of the Company that would involve the probable use or disclosure of Confidential Information or the conversion of customers to the benefit of a competing person or entity to detriment of the Company.

For purposes of this Agreement, "business of the Company" shall mean the creation, production, development, marketing and sale of regulatory information management software designed for medical technology companies.

In the event of a cessation of your employment with the Company for any reason, you agree to disclose the name and address of any new employer or business affiliation to the Company within ten (10) days of your accepting such position. Further, you acknowledge that the Company may furnish notice of this Agreement to your new employer.

Notwithstanding the foregoing, this Agreement is not intended to prohibit (a) employment with a non-competitive independently operated subsidiary, division, or unit of a family of companies that include a competing business, so long as the employing independently operated business unit is truly independent and your services to it do not otherwise violate this Agreement; or, (b) a passive and non-controlling ownership of less than 1% of the stock in a publicly traded company. This provision also does not preclude conduct protected by Section 7 of the NLRA such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for mutual aid and protection.

You acknowledge and agree that the scope of the above-described restrictions is reasonable and appropriate in order to effectuate the Company's interest in trade secrets, confidential information, commercial relationships and goodwill given your current and anticipated job duties for the Company and the nature and scope of the Company's business.

### Non-Solicitation of Customers and Employees

In order to protect the Company's Confidential Information, key business relationships, and good will, you further agree that during the Restricted Period you will not (directly or through the direction or control of others):

a) solicit any of the employees of the Company to leave our employ; or

b) hire, attempt to hire, or assist in hiring any Company employee on behalf of a competing business; or

c) solicit, or attempt to solicit any customers of the Company for the sale of any products or services similar to those offered or sold by the Company and for which you were principally involved with while at the Company, as either a product developer, or in the case of services, as a client contact or consultant; or

d) knowingly engage in any conduct that is intended to cause, or could reasonably be expected to cause a customer to stop or reduce doing business with the Company, or that would involve diverting business opportunities away from the Company;

You further acknowledge and agree that if you violate any of the provisions of this Section, the running of the Restricted Period will be extended by the time during which you engage in such violation(s).

### Additional Provisions

*Construction and Severability.* If any section, paragraph, term or provision of this Agreement, or the application thereof, is determined by a court to be invalid or unenforceable, then the other parts of

such section, paragraph, term or provision shall not be affected thereby and shall be given full force and effect without regard to the invalid or unenforceable portions. In the event that any territorial or time limitations in this Agreement are deemed to be unreasonable by a court, you agree and submit to the reduction of either of the territorial or time limitations, or both, to such an area or period as the court shall deem reasonable.

*Enforcement*. You agree that if you violate any of the covenants and agreements set forth above, the Company would suffer irreparable harm, and that such harm to it may be impossible to measure in monetary damages. Accordingly, in addition to any other remedies which the Company may have at law or in equity, you agree that it shall have the right to have all provisions of this Agreement specifically performed by you, and the Company shall have the right to obtain preliminary and permanent injunctive relief to secure specific performance, and to prevent a breach or contemplated breach, of this Agreement. In the event the Company files suit or commences arbitration to enforce its rights under this Agreement and obtains any relief whatsoever, you agree to pay the Company's reasonable attorneys' fees and costs incurred in connection therewith.

*Jurisdiction and Governing Law*. Any such judicial proceeding involving a dispute under this Agreement shall be brought exclusively in the United States District Court for the Western District of Pennsylvania, or the Court of Common Pleas for Allegheny County, Pennsylvania. Each party hereby irrevocably consents and submits to the personal jurisdiction of the specified forums, and venue therein. Any such suit shall be construed and governed in accordance with the laws of the Commonwealth of Pennsylvania, not including its conflicts of laws provisions.

*Assignment, Successors, etc.* This Agreement, including but not limited to the non-competition and non-solicitation provisions set forth above, may be assigned by the Company, and will take effect for the benefit of any successors or assigns of the Company or any company or entity created by the merger, reorganization or sale of assets of Rimsys, Inc.

*Waiver of Breach*. The waiver by the Company of a breach of any provision of this Agreement by you shall not operate or be construed as a waiver of any subsequent breach.

Binding Obligation

  We ask that you review this letter describing the obligations undertaken as a condition of your employment with care, as we take these obligations seriously and will enforce them. Your employment with the Company is "at will" and does not bind either of us to any specific period of employment.

This Agreement cannot be changed except in writing signed by us and is binding on both of us. This agreement supersedes all of your previous confidentiality agreements with the Company.

I have read, understand and agree to abide by the policies of the Company as stated above and by the terms of this letter.

By: _____

Printed Name: Karen Knutson

Date: March 9, 2022