IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIMSYS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-1630 |
| | ) | |
| KAREN COHN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER OF COURT**

Plaintiff Rimsys, Inc. ("Plaintiff") brings this trade secret and breach of contract action against its former employee, Defendant Karen Cohn ("Defendant"), who, Plaintiff avers, recently resigned and began working for Plaintiff's competitor, Veeva Systems, Inc. ("Veeva"). (Docket Nos. 1, 1-2). Presently pending before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 4 ("Motion")), and Plaintiff's Motion for Expedited Hearing (Docket No. 7).[1] The Court has reviewed Plaintiff's motions, Plaintiff's supporting brief (Docket No. 5), and the Verified Complaint (Docket No. 1) and exhibit attached thereto, all of which were filed September 11-12, 2023. At 5:30 p.m. on September 12, 2023, the Court held a Telephone Conference of Counsel to assure compliance with Rule 65 of the Federal Rules of Civil Procedure in this matter. (Docket Nos. 10, 11). During the conference, Plaintiff's counsel informed the Court that additional filings were forthcoming, and that Plaintiff was not aware of any counsel for Defendant. (Docket No. 11). Later that evening, Plaintiff filed Proposed Findings of Fact and Conclusions of Law (Docket No. 12), as well as a Supplemental Declaration Regarding

---

[1] Along with these motions, Plaintiff also filed a Motion to Expedite Discovery (Docket No. 6) and a Motion for Order of Court Directing Preservation of Documents, Electronically Stored Information, and Things (Docket No. 8), which the Court will rule on separately.

Service Pursuant to Fed. R. Civ. P. 65 (Docket No. 13 ("Supplemental Declaration")), indicating that personal service had been effectuated upon Defendant at approximately 7:57 p.m. on September 12, 2023.[2] The Court has also reviewed these additional filings. On September 13, 2023, Counsel for Defendant entered her appearance (Docket No. 15). On September 14, 2023, the Court held a second Telephone Conference of Counsel, during which the parties presented their positions on the pending motions and discussed related case management issues. (Docket Nos. 16, 17).

In its Motion, Plaintiff requests that the Court issue a temporary restraining order ("TRO") and a preliminary injunction ordering Defendant to: (1) cease unlawfully competing with Plaintiff; (2) immediately return all Confidential Information and Trade Secrets (as defined in the Verified Complaint) in her possession; (3) enjoin Defendant from possessing, using and/or disclosing Plaintiff's Confidential Information and Trade Secrets; and (4) enjoin Defendant from competing with Plaintiff in violation of her non-competition obligations in her Employment Agreement with Plaintiff (or "Agreement," as defined in the Verified Complaint and attached thereto at Docket No. 1-1). (Docket No. 4 at 1).

After careful consideration of Plaintiff's Motion and supporting brief, the Court is persuaded that Plaintiff has met the standard for obtaining a TRO, and the Court will therefore enter a TRO, deny Plaintiff's Motion for an Expedited Hearing, and defer ruling on Plaintiff's request for a preliminary injunction.

---

[2]   Plaintiff's Supplemental Declaration states that the Verified Complaint, Plaintiffs' motions and brief, the Notice of Appearance of Justin D. Beck, and the Summons in this matter were all personally served on Defendant. (Docket No. 13, ¶¶ 1-2). The Supplemental Declaration further indicates that, although Plaintiff's Findings of Fact and Conclusions of Law was not personally served on Defendant, that document, along with the other filings that had been personally served that day, were emailed to Defendant at her personal email account at 9:44 p.m. on September 12, 2023. (*Id.* ¶¶ 3-4).

## I. STANDARD OF REVIEW

A party seeking a TRO must establish the following: (1) a likelihood of success on the merits; (2) that denial of injunctive relief will result in irreparable harm; (3) that granting the TRO will not result in irreparable harm to the defendants; and (4) that granting the TRO is in the public interest. *See Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). The requirements for a TRO are the same as those for a preliminary injunction. *See Saluck v. Rosner*, No. CIV.A. 98-5718, 2003 WL 559395, at *2 (E.D. Pa. Feb. 25, 2003). Upon consideration, the Court finds that each of these four elements is satisfied in the matter presented here. In so ruling, the Court notes that the primary purpose of a TRO and/or preliminary injunction is to preserve the status quo until a decision can be made on the merits. *See Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020).

## II. DISCUSSION

First, the Court agrees with the argument and reasoning provided in Plaintiff's brief, and finds that the facts averred in the Verified Complaint and supported by the attached exhibit (Docket Nos. 1, 1-1) establish more than a reasonable probability of success on the merits such that Plaintiff's Motion for a TRO should be granted. In order to establish a reasonable probability of success on the merits such that a TRO should issue, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n.3 (3d Cir. 2017) ("[The court does] not require at the preliminary stage a more-likely-than-not showing of success on the merits because a likelihood of success on the merits does not mean more likely than not." (internal quotation marks and citation omitted)). Here, Plaintiff has met this burden for its asserted causes of action.

More specifically, Plaintiff avers that Defendant had access to, and is still in possession of, Plaintiff's Confidential Information and Trade Secrets, and that Defendant is now working for a competitor of Plaintiff but cannot do so without inevitably calling upon or using Plaintiff's Confidential Information and Trade Secrets, in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. § 5301 *et seq.*  Plaintiff also alleges that Defendant is in violation of her Employment Agreement, which includes non-disclosure, non-solicitation, and non-compete provisions, under Pennsylvania law, and that she is thus in breach of those provisions of her contract.  Additionally, Plaintiff avers that Defendant has committed various wrongful acts including, but not limited to, misappropriating Plaintiff's Confidential Information and Trade Secrets and violating her Employment Agreement, rendering Defendant liable to Plaintiff for unfair competition under Pennsylvania law.  Given Plaintiff's allegations, at this juncture, the Court finds that Plaintiff has established more than a reasonable probability of success on the merits of its claims.

Second, the Court finds that the averments asserted in the Verified Complaint and supported by the attached exhibit demonstrate that a TRO is necessary to prevent immediate and irreparable harm to Plaintiff.  Plaintiff has shown sufficiently that, absent a TRO, Defendant is likely to harm Plaintiff by continuing to misappropriate its Confidential Information and Trade Secrets for the benefit of Defendant's new employer, Veeva, and Defendant herself. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3d Cir. 1992) (noting that "an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost certainly show immediate irreparable harm"); *Healthcare Servs. Grp., Inc. v. Fay*, 597 F. App'x 102, 103-04 (3d Cir. 2015) ("'[T]he threat of the unbridled continuation of the violation [of a restrictive

covenant] and the resultant incalculable damage to the former employer's business' establishes irreparable harm." (quoting *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977))); *Masure v. Massa*, 692 A.2d 1119, 1122 (Pa. Super. Ct. 1997) (holding that the plaintiff "suffered irreparable injury as the number of lost customers cannot be accurately calculated").

Third, the Court finds that the balance of harms clearly and strongly weighs in favor of Plaintiff. Defendant will not be entirely prevented from working if a TRO is entered, as she will only be prohibited from competing directly with Plaintiff and using Plaintiff's Confidential Information and Trade Secrets which, in any event, she has no right to use for the benefit of anyone but Plaintiff. In contrast, if the Court were to deny the Motion for a TRO, Plaintiff may be harmed by having its Confidential Information and Trade Secrets used by Defendant and/or revealed to competitors such as Veeva. *See Fisher Bioservs., Inc. v. Bilcare, Inc.*, No. Civ.A. 06-567, 2006 WL 1517382, at *21 (E.D. Pa., May 31, 2006) (enforcing an agreement that precluded an employee from using confidential information and soliciting business opportunities from customers); *Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998) (finding that the balance of harms weighed in favor of the employer because the employee would still be able to earn a livelihood); *CentiMark Corp. v. Lavine*, No. 11cv0757, 2011 WL 3209106, at *5 (W.D. Pa. July 28, 2011) (noting that numerous courts that have enforced restrictive covenants against an employee have found that "regardless of the relative wealth of the employer and employee, the harm to the employer trumps the harm to the employee") (internal quotation marks and citations omitted)).

Fourth, the Court finds that the issuance of a TRO in this case is in the public interest. "[T]he public has a clear interest in ensuring fair business practices and safeguarding trade

5

secrets." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 280 (3d Cir. 2019). Additionally, "restrictive covenants serve important business interests in today's economy," and they "have developed into important business tools to allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them." *Quaker Chemical Corp. v. Varga*, 509 F. Supp. 2d 469, 481 (E.D. Pa. 2007); *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (internal quotation marks and citations omitted). Thus, the public interest is best served here by enforcing such an important business tool. *See Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d at 709.

Therefore, the Court finds that all four elements are satisfied here and necessitate issuing a TRO in favor of Plaintiff.

### III. A BOND IS REQUIRED IN THIS INSTANCE

Federal Rule of Civil Procedure 65(c) provides, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Furthermore, according to the Court of Appeals for the Third Circuit:

> As we held in *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir.1988), "[a]lthough the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Id.* Such an extremely narrow exception exists "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'" *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir.1990) (quoting *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1145 (3d Cir. 1977)).

*Zambelli Fireworks Mfg. Co., Inc. v. Wood,* 592 F.3d 412, 426 (3d Cir. 2010).

In both its Verified Complaint and brief in support of its Motion for a TRO, Plaintiff indicates that Defendant's new employer, Veeva, proclaims on its company website that prospective employees are invited to "[j]oin a progressive company that does not require you to sign a non-compete agreement and that **will defend you against attempts to enforce your existing non-compete**," and that "**in the event your former employer pursues a claim, Veeva will provide for your full legal representation** and help make the process as easy as possible." (Docket No. 1, ¶¶ 62-63, 65 (quoting https://www.veeva.com/noncompetes/, last accessed Sept. 15, 2023 (emphasis added))). Veeva's website further informs prospective employees that even "[i]n the unlikely event a non-compete delays or restricts your work at Veeva, you will retain your position and **your compensation will continue unaffected**." (*See id.* ¶ 66; https://www.veeva.com/noncompetes/, last accessed Sept. 15, 2023 (emphasis added))). Accordingly, Plaintiff notes that, since Veeva publicly states that it will retain and continue to pay employees who are enjoined from working in a new position due to a restrictive covenant, it appears that Defendant will suffer no damages if the Motion for a TRO is granted.

Notwithstanding such evidence showing that Defendant will suffer no damages if the requested TRO is issued, Plaintiff proposes in its Proposed Conclusions of Law that the Court require it to post an injunction bond in the amount of $120,000, which is the amount of Defendant's most recent yearly salary with Plaintiff.[3] (Docket No. 12, ¶ 64). Exercising its discretion here in setting the amount of a bond, the Court finds Plaintiff's proposed bond amount to be more than adequate to compensate Defendant in the event she suffers damages if this TRO is wrongfully entered. *See* Fed. R. Civ. P. 65(c); *see, e.g., North American Dental Mgmt., LLC v. Phillips*, Civ. Action No. 23-1202, 2023 WL 4551980, at *4 (W.D. Pa. July 14, 2023) (ordering a $150,000 bond

---

[3]     During the Status Conference held on September 14, 2023, Counsel for Plaintiff indicated that Defendant's most recent salary was $120,000 per year. (Docket No. 17).

where the plaintiff proposed such amount based on plaintiff, at the time of her resignation, earning an annual base salary of $125,000 with a bonus eligibility target of 10%); *Church of Universal Love & Music v. Fayette Cnty.*, Civ. Action No. 06-872, 2009 WL 2612313, at *2 (W.D. Pa. Aug. 24, 2009) (in connection with a preliminary injunction, requiring a nominal bond in the amount of $10,000 from a municipal entity defendant, and noting the lack of documentary evidence supplied by the plaintiff); *Northern Pa. Legal Servs., Inc. v. County of Lackawanna*, 513 F. Supp. 678, 685-86 (M.D. Pa. 1981) (requiring a nominal bond of $100 where there was no evidence that imposition of the preliminary injunction, which continued the status quo, would cause expenses).

Based on the foregoing, pursuant to Federal Rule of Civil Procedure 65(c), the Court finds that $120,000 is an appropriate amount to set as bond in this case, and the Court shall require that Plaintiff post same forthwith.

## IV. **CONCLUSION**

The Court is satisfied that Defendant will not be harmed in any significant way by the granting of a TRO in this matter. Plaintiff has established all the requirements of Rule 65(b) and is entitled to entry of a TRO under the relevant case law. Additionally, the Court will deny Plaintiff's Motion for an Expedited Hearing.

An appropriate Order follows.

### **ORDER OF COURT**

AND NOW, this 15th day of September, 2023, at __11 A.m.__, upon consideration of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 4), for the reasons set forth in the Memorandum, *supra*, and having determined that: (1) Plaintiff has established a likelihood of success on the merits, (2) Plaintiff will suffer irreparable harm if the

8

TRO is denied, (3) granting the TRO will not result in irreparable harm to Defendant, and (4) granting the TRO is in the public interest, IT IS HEREBY ORDERED that said Motion is GRANTED as to Plaintiff's request for a TRO only.

IT IS FURTHER ORDERED as follows:

1) Defendant shall immediately preserve all of Plaintiff's documents, information, and other property, in accordance with the Court's Order granting Plaintiff's Motion for Order of Court Directing Preservation of Documents, Electronically Stored Information, and Things;

2) Defendant is prohibited from misappropriating, using, or disclosing to any person or entity Plaintiff's Confidential Information and Trade Secrets as defined in the Verified Complaint and attached Employment Agreement (Docket Nos. 1, 1-1), regardless of form, electronic or otherwise, and regardless of whether such materials are original, copies, or summaries;

3) Defendant shall otherwise abide by the terms of her Employment Agreement with Plaintiff (Docket No. 1-1), including the non-disclosure, non-solicitation, and non-compete provisions contained therein;

4) In connection with the Court granting its Motion for a TRO, Plaintiff shall post a bond in the amount of $120,000 forthwith to the Clerk of the United States District Court for the Western District of Pennsylvania to be placed by the Clerk into the Clerk of Court's local registry account to remain there until further Order of this Court;

5) Counsel for the parties shall confer and file a Joint Status Report by **September 27, 2023**, addressing whether the parties are able to resolve part or all of the request for preliminary injunction. To the extent a full settlement is not achieved, the parties shall

also, by **September 27, 2023**, file a stipulation selecting an ADR process and Neutral, pursuant to Local Rule 16.2, which shall include a date within fourteen (14) days of the filing of the stipulation for when the Neutral, counsel, and parties with full settlement authority will participate in such ADR session;

6) Following the completion of any necessary expedited discovery, Plaintiff will be required to supplement its pending Motion, brief and Proposed Findings of Fact and Conclusions of Law (Docket Nos. 4, 5, 12), and in accordance with the undersigned's Practices and Procedures, Defendant will be given an opportunity to respond, and Plaintiff may file a reply. A briefing schedule will be issued by separate Order of Court; and

7) After briefing is complete, the Court will determine whether a hearing is necessary on any of the issues concerning Plaintiff's request for injunctive relief. Accordingly, a decision on Plaintiff's Motion for Expedited Hearing (Docket No. 7) is hereby DENIED;

8) This Order shall remain in effect until **September 29, 2023, at** _10:59 Am_, unless otherwise extended, modified or vacated by further Order of Court.

*W. Scott Hardy* (signature)
W. Scott Hardy
United States District Judge

cc/ecf:   All counsel of record

10